■ In the Matter of WILLIAM DOREMUS et al., Respondents, v TOWN OF OYSTER BAY et al., Appellants, and TILLES INVESTMENT COMPANY, Intervenor-Appellant. [711 NYS2d 443] —In a hybrid proceeding pursuant to CPLR article 78, *inter alia*, to review Resolution No. 515-96 of the Town of Oyster Bay and a consent order of the Supreme Court, Kings County (Barash, J.), dated October 3, 1996, which, among other things, rezoned the subject real property, and for a judgment declaring that the prior zoning of the subject property as "A" and "B-A" residential was in accordance with the comprehensive land use plan of the Town of Oyster Bay, the intervenor Tilles Investment Company appeals, as limited by its brief, from stated portions of a judgment of the Supreme Court, Kings County (Barash, J.), dated March 17, 1998, which, *inter alia*, annulled Resolution No. 515-96 of the Town of Oyster Bay, vacated the consent order dated October 3, 1996, and directed the Town Board of the Town of Oyster Bay to comply with the requirements of ECL article 8. The Town of Oyster Bay and the Town Board of the Town of Oyster Bay separately appeal from the same judgment.

Ordered that the appeal by the Town of Oyster Bay and the Town Board of Oyster Bay is dismissed as withdrawn; and it is further,

Ordered that the judgment is affirmed insofar as appealed

from by the intervenor Tilles Investment Company; and it is further,

Ordered that the respondents are awarded one bill of costs payable by the intervenor.

The record supports the Supreme Court's determination that the Town Board of the Town of Oyster Bay (hereinafter the Town Board) failed to meet its obligation as lead agency under the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) when it approved the application by the intervenor Tilles Investment Company (hereinafter Tilles) to rezone the subject property. The Town Board relied on a 10-year-old environmental impact statement (hereinafter EIS), which was submitted in connection with a prior application by the appellant to rezone the property, and failed to meet its obligation to consider not only whether the passage of time created new environmental concerns, but whether the adverse environmental effects identified in the prior EIS could be minimized.

The subject property consists of approximately 81 acres which had been zoned in part as an "A" residence district under Town of Oyster Bay Code § 200, permitting single-family homes on lots of at least two acres, and in part as a "B-A" residence district under Town of Oyster Bay Code § 215, permitting single-family homes on lots of at least one acre. Tilles purchased the property and in 1981 petitioned the Town Board to rezone the property in order to permit the construction of 220 units in residence "B-1", "D", and "B-A" categories. In 1983, after consideration of a Final Environmental Impact Statement (hereinafter FEIS), the Town Board denied Tilles' application.

In 1985, Tilles applied to the Town Board to rezone the property to a combination "E-2" district, in which 218 condominium units would be built, and a "D" district, in which 124 single-family homes would be built, for a total of 342 units. Tilles submitted a Draft Environmental Impact Statement (hereinafter DEIS) in connection with its application, and an FEIS to address comments on the DEIS. After reviewing the DEIS and FEIS, the Nassau County Planning Commission (hereinafter the Planning Commission) recommended denial of Tilles' "E-2/D" rezoning application.

The Planning Commission concluded that the proposed development would over-intensify the use of the property which had many natural amenities. The property was identified as a major deep aquifer recharge zone, and therefore the Planning Commission recommended that the property be developed as

low-density residential, to ensure a source of uncontaminated water, and that any rezoning should include cluster zoning or other limitations on development to minimize possible adverse effects. The Town Board denied this application citing water supply problems, reduction of open space, and inadequate efforts to mitigate adverse environmental effects.

Tilles commenced an action, *inter alia*, for a judgment declaring that the existing zoning of the property was invalid, and in 1994 this Court affirmed an order of the Supreme Court, Kings County, dated April 7, 1992, which denied the parties' respective motions for summary judgment (*see, Tilles Inv. Co. v Town of Oyster Bay*, 207 AD2d 393). Tilles then submitted a settlement proposal in which the entire 81-acre property would be rezoned as a "D" residence district. Under Tilles' proposal, 270 single-family homes would be constructed under the Town's cluster-zone provisions.

The Town Board held hearings on the proposal, and on August 6, 1996, adopted a resolution which authorized the Town Attorney to enter into a consent order agreeing to the settlement proposal submitted by Tilles. The consent order, dated October 3, 1996, which was so-ordered by the Supreme Court, Kings County, stated in part: "WHEREAS, the FEIS contained sufficient information to support a conclusion that the potential environmental impacts of the Application, and development of the Property in accordance therewith, is acceptable environmentally and that any potential environmental impacts can be satisfactorily mitigated. The extensive environmental review in this matter adequately considered the potential adverse consequences of developing the Property at a density equal to the 'E-2' General Residence District * * * Development of the Property in accordance with the provisions of the Residence 'D' District zone, * * * will not have significant environmental impacts, due consideration to those potential environmental impacts and mitigation having been given in connection with approval of the prior FEIS and the Town Board's approval of this Order on Consent. In addition, it is acknowledged that Tilles and/or its successors and/or assigns will perform an environmental study in connection with the necessary Nassau County Planning Commission approval". Following entry of the consent order, Tilles submitted an environmental assessment form to the Nassau County Planning Commission.

The petitioners, who are either individuals residing near the property or civic associations interested in preserving the property, commenced the instant proceeding pursuant to CPLR

article 78/action against the Town of Oyster Bay and the Town Board (hereinafter the appellants), *inter alia*, to review the proposed zoning changes, annul the consent order, and require the promulgation of a new EIS or a supplemental environmental impact statement (hereinafter SEIS). The Supreme Court granted the petition, and, among other things, annulled the consent order and directed the appellants to promulgate a SEIS.

Contrary to the appellants' contention, the consent order entered into by the parties in the action commenced by Tilles is not exempt from review under SEQRA, since the exemption for court actions does not apply to "Type 1" actions (*see, Matter of Abate v City of Yonkers,* 264 AD2d 517; *see also,* 6 NYCRR 617.5 [c] [37]). Furthermore, the requirements of SEQRA were not satisfied by the provision in the consent order which required Tilles to complete an environmental assessment form for the Planning Commission *after* the property was rezoned (*see, Matter of Tri-County Taxpayers Assn. v Town Bd.,* 55 NY2d 41; *Matter of Abate v City of Yonkers, supra*; *Riverhead Bus. Improvement Dist. Mgt. Assn. v Stark,* 253 AD2d 752).

The rezoning of the property to a "D" residential district constituted an action which may have a significant effect on the environment and for which a DEIS and an FEIS were required (*see,* ECL 8-0109 [2], [4]; 6 NYCRR 617.7, 617.9; *Matter of WEOK Broadcasting Corp. v Planning Bd.,* 79 NY2d 373). The Town Board, as lead agency, was required to identify the relevant areas of environmental concern, take a hard look at them, and make a reasonable elaboration of the basis for its determination (*see, Matter of Kahn v Pasnik,* 90 NY2d 569, 574; *Matter of Jackson v New York State Urban Dev. Corp.,* 67 NY2d 400, 417). The Town Board made no effort to meet its obligation to identify the adverse environmental effects of the rezoning (*see, Matter of Kahn v Pasnik, supra*; *see also,* Weinberg, 1998 Supp Practice Commentaries, McKinney's Cons Laws of NY, Book 17½, ECL C8-0109:4, 2000 Pocket Part, at 15) but merely concluded that the 1985 FEIS, which warranted denial of the 1985 rezoning application, established that the 1996 rezoning application was environmentally acceptable.

Although the passage of time, standing alone, does not warrant the preparation of a SEIS (*see, Matter of Jackson v New York State Urban Dev. Corp., supra*, at 425), the applicable regulations permit the lead agency to require a SEIS in order to address specific significant adverse environmental impacts which were not addressed or were inadequately addressed in the prior environmental impact statements, where such adverse environmental impacts arise from changes in the

proposed project, newly discovered information, or a change in circumstances related to the project (*see,* 6 NYCRR 617.9 [a] [7] [i]).

The record reveals that potential environmental impacts, particularly regarding water use and quality and the loss of open space, have changed in the more than 10 years since the FEIS submitted in connection with the prior rezoning application was considered. In 1987, the subject property was designated as part of the Long Island Special Groundwater Protection Area (*see,* ECL 55-0113 [1] [b]), and the property was included in the 1992 Long Island Comprehensive Special Groundwater Protection Area Plan. ECL 8-0109 (9) requires an EIS for any action with a significant impact on a special groundwater protection area. In 1995, the New York State Open Space Conservation Plan included the property on its list of unique open space resources, which protected the Long Island ground water aquifer system. Under the circumstances, the Town Board could not have met its obligation under SEQRA without requiring a SEIS to analyze the proposed rezoning in light of the change in circumstances since 1985 (*see, Matter of Bryn Mawr Props. v Fries,* 160 AD2d 1004; *Glen Head-Glenwood Landing Civic Council v Town of Oyster Bay,* 88 AD2d 484; *see also, Matter of Jackson v New York State Urban Dev. Corp., supra*).

Moreover, even assuming that an SEIS was not required, it is apparent from the record that the Town Board utterly failed to meet its obligation to take a hard look at the adverse environmental impacts which were identified in the 1985 DEIS/FEIS and to set forth a reasoned elaboration of the basis for its determination to rezone the property to "D" residential district (*see, Matter of Kahn v Pasnik, supra; Matter of WEOK Broadcasting Corp. v Planning Bd.,* 79 NY2d 373, *supra;* 6 NYCRR 617.11 [d]). The question before the Town Board concerned the environmental impact of a zoning change which would permit a four-fold increase in the number of single-family homes permissible on the property under then applicable "A/B-A" zoning. The Town Board relied on the fact that Tilles intended to build fewer units than the maximum number which would be permitted in a "D" district and fewer units than were proposed under its failed "E-2/D" rezoning proposal. It does not necessarily follow, however, that any adverse environmental effects of the higher-density rezoning contemplated here would be mitigated because other alternatives would have been worse. The conclusory statement in the consent order that the Town Board gave "due consideration" to

mitigation measures was apparently based solely on the fact that the 1996 rezoning application consisted of fewer units than the previous alternatives. Accordingly, the statements in the consent order were insufficient to establish that the Town Board made a reasoned finding that the adverse environmental effects would be minimized "to the maximum extent practicable" (ECL 8-0109 [8]).

The record indicates that throughout this process Tilles has acted in good faith in responding to the Town Board's environmental concerns. However, the issue is whether the Town Board met its obligations under SEQRA. As it is apparent from this record that the Town Board failed to do so, the Supreme Court properly annulled the resolution rezoning the subject property and vacated the consent order (see, Matter of WEOK Broadcasting Corp. v Planning Bd., supra; Matter of Scenic Hudson v Town of Fishkill Town Bd., 258 AD2d 654; Riverhead Bus. Improvement Dist. Mgt. Assn. v Stark, 253 AD2d 752, supra). O'Brien, J. P., Ritter and Florio, JJ., concur.

S. Miller, J., concurs in the following memorandum: While I agree with both the conclusion and the reasoning of my colleagues, I write separately to make one additional observation.

Our determination herein rests upon our agreement with the Supreme Court's conclusion that the Town of Oyster Bay and the Town Board of Oyster Bay (hereinafter the Town) failed to take the requisite hard look at the relevant environmental factors raised by the revised proposal to develop the subject property as approved. Impact upon, inter alia, groundwater recharge is but one of the matters that must be addressed in a SEIS. However, while I agree that the developer herein has acted in good faith in its attempts to win approval of its rezoning application, I believe recognition and disapproval of some of the less than good-faith stances taken by the Town during the course of this litigation should be noted so as to discourage their repetition.

The record amply demonstrates that municipal opposition to the initial proposed development was largely based upon considerations other than genuine environmental concerns. Indeed, one might reasonably query whether the Town officials were really ever concerned about the environmental effects of the proposed development. Nevertheless, despite the Town's apparent environmental disingenuousness, legitimate environmental concerns do exist, and must be addressed in a SEIS, before the strictures of SEQRA can be said to have been satisfied.